PHILLIP A. TALBERT
United States Attorney
DENISE N. YASINOW
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KAYMEISHA KEYES, <br><br> Defendant. | CASE NO. 2:22-CR-174-JAM <br><br> PLEA AGREEMENT <br><br> DATE: JANUARY 9, 2024 <br> TIME: 9:00 AM <br> COURT: Hon. JOHN A. MENDEZ |

## I.  INTRODUCTION

### A.  Scope of Agreement.

The indictment in this case charges the defendant with violations of 18 U.S.C. § 1343 – Wire Fraud (Counts 1 through 6); 18 U.S.C. § 1341 – Mail Fraud (Counts 7 through 14); 18 U.S.C. § 1029(a)(5) – Access Device Fraud (Count 15); and 18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft (Count 16). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

/ / /

### B. Court Not a Party.

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

The defendant will plead guilty to Count 1 (18 U.S.C. § 1343 – Wire Fraud) and Count 16 (18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft). The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw her pleas should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

**B.     Restitution.**

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that her conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged in the Indictment. The parties agree that restitution will amount to at least $1,116,683. Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court.

Defendant agrees that all criminal monetary penalties imposed by the court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government. Defendant agrees that any payment schedule or plan set by the court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time through all available means.

Defendant further agrees that she will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

Defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of her assets without prior written consent of the United States Attorney, except that the defendant may sell, transfer or convey personal property (including used vehicles and personal items, but not financial instruments, ownership interests in business entities or real property) with an aggregate value of less than $5,000.

**C.     Fine.**

The defendant reserves the right to argue to Probation and at sentencing that she is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is her burden to affirmatively prove that she is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

### D.   Special Assessment.

The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### E.   Violation of Plea Agreement by Defendant/Withdrawal of Pleas.

If the defendant violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Arguing for a departure from the stipulated Guidelines application, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions.

PLEA AGREEMENT                                  4

The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

F.  **Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if she fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, she will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above.

Defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

### III. THE GOVERNMENT'S OBLIGATIONS

**A. Dismissals/Other Charges.**

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Stipulated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

**B. Recommendations.**

1. Incarceration Range.

The government will recommend that the defendant be sentenced to the low-end of the applicable guideline range as determined by the Court for the 18 U.S.C. § 1343 offense, plus the 2-year mandatory sentence under 18 U.S.C. § 1028A(a)(1).

2. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**C. Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following

elements of the offense to which the defendant is pleading guilty, Count One, a violation of 18 U.S.C. § 1343 – Wire Fraud:

> First, beginning at least as early as April 2020 and continuing through August 2021, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;
>
> Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;
>
> Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and
>
> Fourth, the defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, Count Sixteen, a violation of 18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft:

> First, the defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person; and
>
> Second, the defendant knew that the means of identification belonged to a real person; and
>
> Third, the defendant did so during and in relation to a violation of 18 U.S.C. § 1343 – Wire Fraud.

The defendant fully understands the nature and elements of the crimes charged in the indictment to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

## V. MAXIMUM SENTENCE

**A.    Maximum Penalty.**

The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1343 (Wire

Fraud) is 20 years of incarceration, a fine of $250,000, a 3-year period of supervised release, and a special assessment of $100. For a violation of 18 U.S.C. § 1028A(a)(1) (Aggravated Identity Theft), the Court must impose a mandatory sentence of 2 years of incarceration consecutive to any term of incarceration imposed under any other count of the indictment, and the violation further includes a maximum $250,000 fine, a maximum 1-year period of supervised release, and a $100 special assessment. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which she is pleading guilty. The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

      **B.**    **Violations of Supervised Release.**

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years of imprisonment.

### VI.    SENTENCING DETERMINATION

      **A.**    **Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

      **B.**    **Stipulated Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following

sentencing guidelines variables and therefore stipulate to the following:

1. Base Offense Level: +7 (U.S.S.G. §2B1.1(a)(1))

2. Intended Loss Amount: +16 (Over $1,500,000 – U.S.S.G. §2B1.1(b)(1)(I))

3. Victim-related Adjustments: +2 (More than 10 victims – U.S.S.G. §2B1.1(b)(2)(A))

4. Acceptance of Responsibility: See paragraph III.B.2 above (-3)

5. Criminal History: The parties estimate, but do not stipulate, that the defendant's criminal history category will be III.

6. Estimated Sentencing Range: 51-63 months + mandatory 24 months consecutive (The defendant understands that if the criminal history category differs from the parties' estimate, her Guidelines sentencing range may differ from that set forth here.)

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on the defendant's post-plea obstruction of justice (§3C1.1). Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines.

The defendant is free to recommend to the Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a), except she cannot argue for a sentence below the 2-year mandatory consecutive sentence under 18 U.S.C. § 1028A(a)(1). The government will recommend that the defendant be sentenced to the low-end of the applicable guideline range as determined by the Court for the 18 U.S.C. § 1343 offense, plus the 2-year mandatory sentence under 18 U.S.C. § 1028A(a)(1).

## VII.  WAIVERS

### A.  Waiver of Constitutional Rights.

The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on her behalf; (f) to confront and cross-examine witnesses against her; and (g) not to be

compelled to incriminate herself.

B. <u>**Waiver of Appeal and Collateral Attack.**</u>

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her pleas, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which she is pleading guilty. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate her pleas, dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in Section II.E herein.

C. <u>**Waiver of Attorneys' Fees and Costs.**</u>

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any

PLEA AGREEMENT 10

charges previously dismissed).

### D. Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offenses to which the defendant is pleading guilty. The defendant and her counsel have discussed the fact that at least one charge to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: Feb. 7, 2024

_____
JENNIFER MOUZIS
Attorney for Defendant

B.  **Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated:                                      *Kaymeisha Keyes*   2.5.24
                                            KAYMEISHA KEYES
                                            Defendant


C.  **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated:  2/7/2024                            PHILLIP A. TALBERT
                                            United States Attorney

                                            _____
                                            DENISE N. YASINOW
                                            Assistant United States Attorney

PLEA AGREEMENT                              12

EXHIBIT "A"

Factual Basis for Pleas

Beginning in or about April 2020, and continuing through in or about August 2021, defendant KAYMEISHA KEYES perpetrated a wire and mail fraud scheme that targeted the Unemployment Insurance (UI) benefit program that California administers through its Employment Development Department (EDD).

Between in or about April 2020 and continuing through in or about October 2020, KEYES resided at one or more addresses in Northern California. Between in or about October 2020 and continuing through in or about August 2021, KEYES resided at an address in Tracy, State and Eastern District of California.

During the scheme, KEYES obtained the personally identifiable information (PII) of more than 70 individuals and filed fraudulent UI benefit claims under their identities. The claims represented, among other things, that the claimants had recently lost employment from businesses or were unable to find employment due to the COVID-19 pandemic. For example, KEYES falsely stated on many of the UI claim applications that the claimants were recently employed as an "account manager" or "cashier," when in fact they were never employed in those roles.

The over 70 fraudulent UI applications sought over $2,020,204 in UI benefits. EDD relied on the submitted false information on the UI benefit applications to approve many of the applications and calculate the benefits ultimately paid out. This false information was also material to EDD's decision to initially pay and continue to pay the benefits. EDD notified Bank of America (BofA), which issued and mailed benefits in the form of prepaid Bank of America debit cards to addresses under KEYES and/or her associates' control. EDD paid out at least $1,116,683 in benefits across over 70 EDD-BofA debit cards.

KEYES' filing of the fraudulent UI claims involved the use of interstate wires that terminated in or passed through the Eastern District of California. For example, most, if not all, of the applications required KEYES to verify the stolen identities she used through ID.me. For identities that were verified, the application process involved the interstate transmission, over the Internet, of identity information from ID.me's computers located outside of California to EDD's computers in the Eastern District of California. These interstate wires were essential and material to the scheme because they were required for EDD to receive, process, approve, and fund each fraudulent UI claim.

The scheme also involved aggravated identity theft, in which KEYES knowingly possessed and used without legal authority the means of identification of various victims in relation to the wire and mail fraud scheme. For example, in or about January 2021, KEYES possessed and used the name, date of birth, and social security number (ending in 5485) of Person 1 to file an EDD UI application under Person 1's identity and inputted the same PII into the corresponding ID.me account for the identity verification step. This PII was transferred to both EDD and ID.me as part of the complete UI application process, which led to the mailing of a BofA debit card to KEYES' home address in Tracy in or about February 2021. In total, the EDD paid out approximately $13,104 in fraudulent UI benefits in the name of Person 1.

I have reviewed the entire factual basis in Exhibit A above and, as far as my own conduct and personal knowledge is concerned, I adopt it as my own true statement.

DATED: 2/5/2024

KAYMEISHA KEYES
Defendant