PHILLIP A. TALBERT
United States Attorney
DENISE N. YASINOW
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:22-CR-174-JAM |
|---|---|
| Plaintiff, | |
| v. | UNITED STATES'S SENTENCING MEMORANDUM |
| KAYMEISHA KEYES, | DATE: September 17, 2024 |
| Defendant. | TIME: 9:00 a.m. |
| | COURT: Hon. John A. Mendez |

## I. INTRODUCTION

The government respectfully submits its sentencing memorandum concerning Kaymeisha Keyes, who is convicted of wire fraud and aggravated identity theft. Consistent with the plea agreement, and mindful of Keyes's offense conduct, her history and characteristics, and the need to deter Keyes and the public from committing such offenses, the government requests that the Court impose a low-end guidelines recommendation of 134 months of imprisonment,[1] 3 years of supervised release, a restitution order of $1,116,683.00, and a $200 special assessment.

## II. FACTUAL BACKGROUND

From about April 2020 through about August 2021, Keyes perpetrated a scheme to defraud the United States and the California Employment Development Department (EDD) of money that was

---

[1] This includes 110 months for the wire fraud count and 24 months mandatory consecutive for the aggravated identity theft count.

intended for legitimate applicants under the CARES Act.  Keyes submitted at least 70 fraudulent unemployment insurance applications to EDD, using the personal identifying information (PII) of identity-theft victims whose PII she harvested online.  ECF 35 at 13; PSR ¶¶ 6-9, 12.  Keyes's scheme sought approximately $2,020,204 in unemployment insurance benefits, with approximately $1,116,683 actually paid out.  ECF 35 at 13; PSR ¶ 6.

### III.   SENTENCING GUIDELINES CALCULATION

The plea agreement contains the parties' stipulations as to the applicable calculations under the sentencing guidelines.  *See* ECF 35 at 8-9.  According to the stipulations, the base offense level for wire fraud is 7 under § 2B1.1(a)(1), plus a 16-level increase under § 2B1.1(b)(1)(I) for intended loss over $1,500,000, and plus a 2-level increase under § 2B1.1(b)(2)(A) for more than 10 victims.  ECF 35 at 9.  While the plea agreement offered a potential 3-level reduction for acceptance of responsibility, the Probation Office determined that Keyes was not entitled to such credit based upon her statements and conduct at her interview.  PSR ¶¶ 38-39.  The government has no reason to doubt the Probation Office's assessment, and under Paragraph III.B.2. of the plea agreement does not advocate for any reduction for acceptance of responsibility.  *See* ECF 35 at 6.  Therefore, the government agrees with the PSR that the total adjusted offense level on the wire fraud count is 25.  PSR ¶ 40.

Keyes's criminal history category is VI according to the PSR.  PSR ¶ 59.  While this differs from the parties' estimation in the plea agreement, the plea agreement expressly stated that the criminal history category was an estimation rather than a stipulation.  ECF 35 at 9.  Further, the government has no reason to doubt the accuracy of the Probation Office's criminal history calculation.  Therefore, the government agrees with the PSR that the criminal history category is VI.

The government therefore adopts the PSR's guidelines calculations, which calculates a total offense level of 25 and a criminal history category of VI, for an advisory sentencing range of 110-137 months of imprisonment for the wire fraud count and a mandatory 24 months consecutive for the aggravated identity theft count.  PSR ¶ 86.

### IV.   ANALYSIS OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

Under the applicable sentencing factors, the Court should impose a sentence at the low-end of the guidelines range, which is a custodial term of 110 months on the wire fraud count followed by 24

months on the aggravated identity theft count, for a total of 134 months of imprisonment.

A. **The Nature and Circumstances of the Instant Offense Involves the Theft of Individuals' PII and Public Funds Meant to Alleviate the Covid-19 Pandemic**

The CARES Act, and accompanying program administered by EDD, was designed to provide emergency financial assistance to those in California who suffered unemployment during the Covid-19 pandemic. Taking advantage of this program, Keyes stole dozens of victims' PII off of the dark web and then attempted to steal over $2 million in funds that were meant for people suffering pandemic-related hardships. Keyes never cooperated with law enforcement to identify co-conspirators, and she did not adequately accept responsibility for her conduct, as she minimized her role, conduct, and loss amount to the Probation Office during her interview. PSR ¶ 38. The vehicles, cell phones, cash, and jewelry seized during the search of her residence demonstrate the extent of her involvement in the offenses. PSR ¶¶ 15-16, 56. Keyes's conduct was serious and justifies a 134-month sentence.

B. **The Recommended Low-End Sentence Also Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Provides Just Punishment for the Offense**

When imposing a sentence, courts must consider the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offenses. A 134-month custodial sentence satisfies all of these factors. Keyes's conduct here was serious and has harmed the federal government along with all the individuals whose information was used in the fraudulent applications. The recommended sentence of 134 months in prison will promote respect for the law, provide just punishment for the offense, and achieve the factors set forth in 18 U.S.C. § 3553(a)(2)(A).

C. **Defendant's History and Characteristics Further Warrant a Low-End, 134-Month Sentence of Imprisonment**

Keyes has an extensive criminal history of fraud and theft-related offenses, which appeared to escalate in seriousness, culminating in the current offenses. PSR ¶¶ 46-56. It is true that Keyes has experienced hardships in life, including the death of her father at a young age and suffering from a gunshot wound. PSR ¶¶ 66, 70. These experiences, while tragic, do not provide a reason to vary downward. Instead, they are reasons for her to be sentenced at the low-end of the guidelines range.

///

     **D.**     **A 134-Month, Low-End Sentence Will Also Specifically and Generally Deter Criminal Conduct**

In addition to the factors already analyzed, the government's recommended sentence will provide specific and general deterrence to further criminal conduct. By sentencing Keyes to 134 months in prison, it will help ensure she does not commit similar financial crimes in the future, and it will hopefully deter others from engaging in similar efforts to unlawfully obtain federal benefits at the taxpayer's expense.

## V.    CONCLUSION

The government respectfully asks that the Court sentence Keyes to a low-end sentence of 134 months of imprisonment, 3 years of supervised release, a restitution order of $1,116,683.00, and a $200 special assessment.

Dated:  September 10, 2024

PHILLIP A. TALBERT  
United States Attorney

By:  /s/ DENISE N. YASINOW  
DENISE N. YASINOW  
Assistant United States Attorney